UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VIOLA ALSTON, on behalf of herself and all
others similarly situated,

                Plaintiff,

                                              CIVIL CASE NO. 05-72629
v.                                      HON. MARIANNE O. BATTANI

ADVANCED BRANDS & IMPORTING CO.,
et al.,

                Defendants.

_____/

**OPINION AND ORDER DISMISSING PLAINTIFF'S COMPLAINT**

**I.      INTRODUCTION**

Before the Court is defendant Domestic Brewers, Distillers, and Importers consolidated[1]

motion to dismiss (Doc. #18) and defendant The Beer Institute's motion to dismiss (Doc. #27).

On March 30, 2005, Plaintiff filed a putative class action law suit in Wayne County Circuit

Court against well over one hundred[2] domestic brewers, distillers, importers, and related

corporate entities.  Plaintiff is a parent of children that have allegedly been injured because they

are subject to Defendants' advertising of their products in the mass media.  She alleges that the

advertising is responsible for the illegal, underage purchase and consumption of alcoholic

_____

[1] Plaintiff's complaint names over a hundred different brewers, distillers, and importers
of alcoholic beverages.  Together, these defendants have consolidated their efforts and will be
referred to as the Domestic Brewers, Distillers, and Importers.

[2] On April 24, 2006, Plaintiff voluntarily dismissed seventy five foreign and non-entity
defendants, leaving forty six remaining defendants.

beverages, and she seeks to recover the money spent by underage drinkers purchasing alcohol as damages. Plaintiff, on behalf of herself and a class of parents, alleges claims of negligence, unjust enrichment, public nuisance, fraudulent concealment, and violations of the Michigan Consumer Protection Act ("MCPA") and the Michigan Pricing and Advertising Act ("MPAA"). MICH. COMP. LAWS ANN. §§ 445.901 *et seq*. and MICH. COMP. LAWS ANN. §§ 445.351 *et seq*., respectively. She also seeks, on behalf of a second class of parents, injunctive and declaratory relief that would govern Defendants' advertising content and placement. The first class, which demands "disgorgement" and damages, is alleged to consist of parents or guardians of unemancipated children in Michigan whose funds were used to purchase alcoholic beverages consumed by Michigan minors, and marketed by Defendants during the period 1982 to the present. The second class, which seeks injunctive relief, is defined to include all Michigan parents and guardians of children.

The marketing scheme at issue here, which, according to Plaintiff, began no later than 1982 and continues to the present, involves an integrated series of actions allegedly designed to increase the number of children who illegally buy and drink alcoholic beverages. These actions include: developing and promoting beverages specifically designed to appeal to new and underage drinkers and known by the Defendants to appeal to underage drinkers, often called "alcopops"; advertising in media that minors read, see, or use in disproportionate numbers; developing promotional themes specifically tailored to appeal to minors, including the portrayal of children flouting authority, and alcohol-enhanced sexual prowess; market research to target promotional and advertising efforts at children; internet marketing designed to attract and target children, including maintaining web sites that offer games, contests and other content designed

to appeal to children; using cartoons, logos, and promotional items such as apparel and toys, and

using actors, models and spokespersons who appear younger than the legal drinking age so that

the promotions appeal to minors; and, sponsoring promotional events designed to appeal to

minors, including beach and spring break "parties."  Plaintiff also alleges that trade associations,

such as The Beer Institute, play key roles in the Defendants' scheme, by allegedly serving as

clearinghouses for marketing information used to implement the scheme, and as sham

self-regulatory bodies that shift the public's focus away from alcohol advertising aimed at

underage drinkers.

Defendants seek dismissal, alleging a litany of deficiencies in Plaintiff's claims.

Defendants contend that the injunctive relief sought is an unconstitutional prior restraint of

speech and is preempted by the Michigan legislature's and the Liquor Control Commission's

exclusive control over the promotion of alcohol.  Defendants also contend that: Michigan's

product liability act bars Plaintiff's claims, Plaintiff's negligence claim fails to plead a

cognizable duty owed to her, or legal and actual cause of her injuries; and, Plaintiff's remaining

claims fail as a matter of law.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows district courts to dismiss a complaint

which fails "to state a claim upon which relief may be granted."

> This rule allows a defendant to test whether, as a matter of law, the plaintiff is
> entitled to legal relief even if every allegation in the complaint is true.  Under this
> standard, a complaint should be dismissed only where it appears that the plaintiff
> can prove no set of facts in support of his claim which would entitle him to relief.

Tidik v. Ritsema, 938 F.Supp. 416, 421 (E.D. Mich. 1996).  When faced with a FED. R. CIV. P.

12(b)(6) motion to dismiss, a district court,

3

must construe the complaint in the light most favorable to the plaintiff, accept all
factual allegations as true, and determine whether the plaintiff undoubtedly can
prove no set of facts in support of his claims that would entitle him to relief.
Meador v. Cabinet for Human Resources, 902 F.2d 474, 475 (6th Cir.), cert.
denied, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990).  A complaint need
only give "fair notice of what the plaintiff's claim is and the grounds upon which
it rests."  Lawler v. Marshall, 898 F.2d 1196, 1199 (6th Cir.1990) (quoting
Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)).  A
judge may not grant a FED. R. CIV. P. 12(b)(6) motion to dismiss based on a
disbelief of a complaint's factual allegations.  Id.  While this standard is decidedly
liberal, it requires more than the bare assertion of legal conclusions.  Scheid v.
Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir.1988).  "In practice,
'a ... complaint must contain either direct or inferential allegations respecting all
the material elements to sustain a recovery under some viable legal theory.'"  Id.
(quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th
Cir.1984), cert. denied, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985)
(quoting In re Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir.1981)).

In re DeLorean Motor Co., 991 F.2d 1236, 1240 (6th Cir. 1993).  However, the court does not

give the presumption of truthfulness to any legal conclusions, opinions, or deductions, even if

they are couched as factual allegations.  Sexton v. Barry, 233 F.2d 220, 223 (6th Cir.1956);

Tidik, 938 F.Supp. at 421; Western Mining Council v. Watt, 643 F.2d 618, 629 (9th Cir. 1980);

Mitchell v. Archibald & Kendall, Inc., 573 F.2d 429, 432 (7th Cir. 1978).  Accordingly, to

determine whether a complaint should be dismissed for failure to state a claim under Rule

12(b)(6), this court must examine the applicable substantive law and the facts alleged in the

plaintiff's complaint.

## III.   ANALYSIS

### A.   Plaintiff's Complaint Fails to State a Claim as a Matter of Law

As an initial matter, Plaintiff's claims fail because the Complaint does not put each of the

over one hundred Defendants on notice of the factual basis of her injury.  The gravamen of the

Complaint is that Plaintiff was pecuniarily injured when her children used "family assets" to

4

illegally purchase alcohol, and that but for Defendants' ads, her children would not have made such a purchase.  However, the complaint is utterly devoid of a factual basis.

The Complaint does not indicate whether Plaintiff's children were minors, whether they consumed any of Defendants' products, whether they even viewed any of the advertisements, let alone whether any of Defendants' ads had such a profound affect on her children that they were induced to use "family assets" to illegally purchase any one of Defendants' products.  There is a litany of questionable ad campaigns engaged by Defendants listed in the Complaint.  However, not once in the almost seventy-four page Complaint does Plaintiff set forth facts in support of her claim which would entitle her to relief against a single defendant.  No facts are pleaded that support any allegations that would tie any Defendants' conduct to Plaintiff's injury.  Rather, the Complaint details how, *in the abstract*, Defendants' actions could be tortious.

Without factual allegations that put each Defendant on notice as to how its actions caused her injury, the Complaint is nothing more than a diatribe against the advertising practices of the alcohol industry as a whole.  It merely contains legal conclusions, opinions, and deductions couched as factual allegations, and lacks concrete facts directed at specific defendants.  Sexton, 233 F.2d at 223.  Even if every allegation in the Complaint is true, Plaintiff would not be entitled to relief, because there is no allegation that her children saw any of Defendants' ads and then purchased any of Defendants' products with family funds.  Therefore, the claims will be DISMISSED.  However, because Plaintiff's pleading deficiencies could, theoretically, be remedied, and Defendants have raised a number of reasons why Plaintiff's claims should be dismissed with prejudice, each, in turn, will be addressed.

**B.     The Liquor Control Commission and Preemption**

Defendants contend that the Complaint effectively asks the Court to determine the proper content of Defendants' advertising, what media Defendants may utilize, the audience age composition, and/or the time of day when such advertising may occur.  Thus, Defendants contend that if this Court were to assume the regulatory role that Plaintiff proposes, it would displace the clear constitutional and statutory structure governing alcohol sales and marketing in Michigan that vests exclusive and complete control in the Michigan Legislature and the Liquor Control Commission ("LCC").  Defendants also contend that Plaintiff's claims are preempted because the Legislature and the LCC have fully occupied the field of alcohol advertising regulation.

"[T]he legislature may by law establish a liquor control commission which, subject to statutory limitations, shall exercise complete control of the alcoholic beverage traffic within this state . . . ."  MICH. CONST. art. IV, § 40.  "Except as otherwise provided in this act, the commission shall have the sole right, power, and duty to control the alcoholic beverage traffic and traffic in other alcoholic liquor within this state, including the manufacture, importation, possession, transportation and sale thereof."  MICH. COMP. LAWS ANN. § 436.1201(2).  Defendants' have offered no authority to support the contention that the Liquor Control Commission has exclusive control over regulating alcoholic beverage ad content.  Although not formally defined in the Liquor Control Code ("Code"), "traffic" is expounded upon in § 436.1903, which bars anyone, directly or indirectly from the *trafficking* of alcoholic liquor unless licensed under the act.  MICH. COMP. LAWS ANN. § 436.1903.  Specifically, that section bars the "manufacture, manufacture for sale, sell, offer or keep for sale, barter, furnish, import, import for

6

sale, transport for hire, transport, or possess any alcoholic liquor unless" licenced under the act. Id. Therefore, the LCC's complete control over alcoholic beverage traffic does not include complete control over the advertising of alcoholic beverages. Moreover, the LCC administrative rules that Defendants cite in support of their argument deal exclusively with point-of-sale displays, and not print or television ads.

Moreover, the LCC promulgated administrative rules in 1979 that regulated print and television ads:

> Advertising in newspapers and periodicals, by all licensees except retail licensees, shall be limited to those published not less than quarterly and having a second class mailing permit, except upon written order of the commission.

Administrative Code 1979, R 436.1309(2).

> Alcoholic liquor shall not be advertised in a publication or program for a special occasion, except upon written order of the commission 30 days in advance of the event.

Administrative Code 1979, R 436.1309(3). The Michigan Attorney General issued an opinion that such rules were an unconstitutional restriction on commercial speech. 1981-1982 Mich. Ap. Att'y Gen. 607, 1982 WL 183544. Those rules were later revised, and now only reserves the LCC's right to review and reject advertising not in accordance with the act. Therefore, Defendants' argument that the LCC has exclusive control over the advertising of alcoholic beverages is untenable and Plaintiff's Complaint will not be dismissed for this reason.

Next, Defendants argue that Plaintiff's common law claims are preempted by statutory regulation of the sale of alcohol by the Michigan Legislature. Defendants again contend that the LCC has exclusive authority to regulate alcohol sales and advertising, thus, the field of alcohol regulation is preempted. They then argue that Plaintiff's claims seek to regulate alcohol

advertising, and thus, her Complaint must be dismissed.  However, the authority Defendants cite

deal exclusively with the preemption of local or municipal ordinances that further regulate the

sale of alcohol.  Moreover, while the LCC's authority in the area of regulation of the traffic of

alcohol is plenary, the commission's plenary authority is limited to the regulation of alcohol

trafficking, and not the regulation of constitutionally protected commercial speech.  Therefore,

Plaintiff's claims will not be dismissed because of preemption.

### C.    Plaintiff's Counts I & II, Violation of the MCPA and MPAA.

#### 1.    Michigan's Product Liability Act

Defendants next argue that because Plaintiff's MCPA and PAA claims are based on the

"marketing, selling [and] advertising" of alcohol beverages, they are barred by Michigan's

Product Liability Act ("MPLA") because the MPLA forecloses actions against manufacturers or

sellers of products where the inherent dangers of the product are commonly known.

> (h) "Product liability action" means an action based on a legal or equitable theory
> of liability brought for the death of a person or for injury to a person or damage to
> property caused by or resulting from the production of a product.
> (i) "Production" means manufacture, construction, design, formulation,
> development of standards, preparation, processing, assembly, inspection, testing,
> listing, certifying, warning, instructing, marketing, selling, advertising,
> packaging, or labeling.

MICH. COMP. LAWS ANN. § 600.2945.

While at first blush Plaintiff's claims appear to fall under the ambit of a products liability

claim, it does not.  The Michigan legislature intended to created a separate cause of action for

plaintiffs injured by false or misleading ads.  Defendants have cited no authority for the

proposition that the MPLA has displaced the MCPA or PAA.  Therefore, Defendants assertions

that Plaintiff's claims can only be brought as a products liability action are unfounded.

8

### 2.      The Michigan Consumer Protection Act

The MCPA authorizes any person who suffers loss as a result of unfair, unconscionable,

or deceptive trade practices to bring an action to enjoin the prohibited conduct, obtain

declaratory relief, or recover damages.  MICH. COMP. LAWS ANN § 445.911.  The MCPA defines

the relevant unfair, unconscionable, or deceptive advertising practices as follows:

> (c) Representing that goods or services have sponsorship, approval,
> characteristics, ingredients, uses, benefits, or quantities that they do not have or
> that a person has sponsorship, approval, status, affiliation, or connection that he or
> she does not have.
> . . . .
> (s) Failing to reveal a material fact, the omission of which tends to mislead or
> deceive the consumer, and which fact could not reasonably be known by the
> consumer.

MICH. COMP. LAWS ANN § 445.903.

Plaintiff claims that by targeting minors, Defendants have violated § 445.903(c) because

they implicitly represented that their products have uses and benefits to targeted audiences.

Plaintiff then argues that because it is illegal for minors to consume alcohol, Defendants'

products cannot have the advertised uses and benefits for minors, even if the statements made in

the ads would not be misleading or deceptive if targeted at adults.

The provisions of the MCPA are to be construed with reference to the common-law tort

of fraud.  Mayhall v. A. H. Pond Co., Inc., 341 N.W.2d 268, 270 (1983).

> In order to show fraud or misrepresentation, plaintiff must prove: (1) that
> defendant made a material misrepresentation; (2) that the representation was
> false; (3) when defendant made the representation, defendant knew that it was
> false, or made it recklessly without knowledge of its truth or falsity; (4) that
> defendant made it with the intent that plaintiff would act upon it; (5) that plaintiff
> acted in reliance upon it; and (6) that plaintiff suffered injury.  Hi-Way Motor Co
> v. Int'l. Harvester Co., 398 Mich. 330, 336, 247 N.W.2d 813 (1976).  An action
> for fraudulent misrepresentation must be predicated on a statement relating to a
> past or an existing fact.  Id.  Future promises are contractual and cannot constitute

9

actionable fraud.  <u>Id</u>.

<u>Baker v. Arbor Drugs, Inc.</u>, 544 N.W.2d 727, 732 (Mich. Ct. App. 1996).  "To be material, the representation need not 'relate to the sole or major reason for the transaction, but . . . it [must] relate to a material or important fact.'"  <u>Zine v. Chrysler Corp.</u>, 600 N.W.2d 384, 398 (Mich. Ct. App. 1999)(<u>quoting</u> <u>Papin v. Demski</u>, 169 N.W.2d 351, 353 (1969).

The MCPA creates a statutory duty to disclose material facts, but Defendants had no duty under the MCPA, or the common law, to disclose the either inherent dangers of consuming alcoholic beverages, or that alcohol would not make fantasies come to life.  <u>See</u> <u>Overton v. Anheuser-Busch Co.</u>, 517 N.W.2d 308, 310 (Mich. Ct. App. 1994).  Nor did Defendants have a duty to disclose that underage drinking is illegal.  Every person who walks into a store where alcohol is sold is clearly put on notice that a purchaser must be twenty-one years old to buy alcohol.  Further, grandiose suggestions that Defendants' products will make fantasies come true constitutes puffery, and does not give rise to actionable fraud.  <u>Id</u>., at 309.  Therefore, Plaintiff has failed to state an action claim under subsection (c).

Nor can she state a claim under subsection (s).

Subsection 3(1)(s) prohibits making an omission that tends to mislead or deceive any consumer, but only if the omitted fact could not reasonably be known by that consumer.  Thus, the issue is not whether the omission is misleading to a reasonable consumer but whether the consumer could reasonably be expected to discover the omission at issue.

<u>Zine v. Chrysler Corp.</u>, 600 N.W.2d 384, 398 (Mich. Ct. App. 1999).  In a case under the PAA, the Michigan Court of Appeals held, in case where the plaintiff claimed that a beer company's television ads were deceptive and misleading because they featured beer as a source of fantasies come to life, that "[b]ecause the dangers inherent in the consumption of beer are well known to

10

the general public, nothing material was concealed."  Overton, 517 N.W.2d at 310.  The court in

Overton also recognized that the Michigan Supreme Court "has long recognized that the dangers

inherent in alcohol consumption are well known to the public.  People v. Hoy, 380 Mich. 597,

604, 158 N.W.2d 436 (1968); Gaines v. Sun Life Assurance Co. of Canada, 306 Mich. 192, 201,

10 N.W.2d 823 (1943); cert. den. 321 U.S. 789, 64 S.Ct. 789, 88 L.Ed. 1080 (1944); Hemington

v. Hemington, 221 Mich. 206, 209, 190 N.W. 683 (1922), . . . ."  Id.

Plaintiff argues that because of their age, minors are unable to appreciate or understand

the deleterious affects of alcohol, or that Defendants' ads that show "unrestricted merriment"

after consuming alcohol are not true.  Overton, 517 N.W.2d at 309.  However, to suggest that

minors, especially teenagers, cannot reasonably be expected to discover the omission at issue,

i.e., that alcohol does not make your fantasies come true, is untenable.  To assert that minors,

because of their age, cannot understand that alcohol does not, in fact, make everyone more

attractive, transport them to a tropical paradise, or other similar scenarios that are common

themes in alcohol ads is ridiculous at best.  Moreover, while minors may be considered

incompetent to handle the effects of the intoxication, there is no presumption that minors are

incompetent to watch advertising, handle the messages included therein, or that they are

incompetent to understand that underage drinking is illegal.  See Longstreth v. Hensel, 377

N.W.2d 804, 815 (Mich. 1985)(minor incompetent to handle effects of intoxication, but the law

presumes that he was competent to drive a car in a nonnegligent manner).  Therefore, Plaintiff

cannot state a claim for violation of § 445.903 subsection (s) of the MCPA.


### 3.     The Michigan Pricing and Advertising Act

> The PAA regulates the pricing and advertising of consumer items.  It prohibits placing before the public an advertisement that contains a statement or representation that is untrue, deceptive, or misleading.  M.C.L. § 445.356(1); M.S.A. § 19.853(16)(1).  The act provides that, in determining whether advertising is deceptive or misleading, the extent to which the advertising fails to reveal facts that are material in light of the representations made or suggested in a positive manner shall be taken into account.  M.C.L. § 445.356(3); M.S.A. § 19.853(16)(3).  This Court has previously held that the PAA is to be construed with reference to the common-law tort of fraud.  Mayhall v. A.H. Pond Co., Inc., 129 Mich.App. 178, 182, 341 N.W.2d 268 (1983).

Overton, 517 N.W.2d at 309.  The provisions of the PAA, like the MCPA, are to be construed with reference to the common-law tort of fraud.  Mayhall, 341 N.W.2d at 270.

Plaintiff contends that the Complaint identifies a myriad of false statements made by the Defendants as part of a scheme to sell alcoholic beverages to minors, and that Defendants ads do not constitute mere puffery because they intentionally seek to induce illegal behavior of minors. Plaintiff acknowledges that the same ads would be considered puffery if aimed at adults.  As mentioned above, Plaintiff has not pleaded any factual allegations about specific ads by specific Defendants that contain false or misleading information that is a violation of the PAA, or how the ads intentionally induce minors to drink.  Plaintiff merely includes conclusory allegations that Defendants' ads induce minors to drink because they make drinking seem appealing.  Ads that show beautiful men and women engaging in unrestricted merriment, or fantasies coming true is merely puffery, and is not actionable as fraud.  Overton, 517 N.W.2d at 309.  "A deceptive act or practice is not the mere invention of a scheme or marketing strategy, but the actual misrepresentation or omission to a consumer, by which the consumer is caused actual, although not necessarily pecuniary, harm."  Levine v. Phillip Morris Inc., 798 N.Y.S.2d 710, 2004 WL 2334287 at ***7 (Sup. Ct. N.Y.  2004).  The inherent characteristics of alcohol are well known by the public.  Overton, 517 N.W.2d at 310.  As stated previously, while minors

may be considered incompetent to handle the effects of the intoxication, there is no presumption that minors are incompetent to watch advertising, handle the messages included therein, or that they are incompetent to understand that underage drinking is illegal. See <u>Longstreth</u>, 377 N.W.2d at 815.

Moreover, Plaintiff does not point to one ad that conveys the message that underage drinking is legal. Minors can be prosecuted for illegally purchasing alcohol, and therefore, are charged with the knowledge that a minor who purchases alcohol knows that purchase is unlawful. Both the dangers inherent in alcohol consumption and the illegality of underage drinking are well known to the public, including minors. See <u>Overton</u>, 517 N.W.2d at 310, <u>Longstreth</u>, 377 N.W.2d at 815. Therefore, Plaintiff has failed to identify any advertisement that contains a statement or representation that is untrue, deceptive, or misleading in violation of the PAA.

### D.     Plaintiff's Negligence Claim

It is axiomatic that "[t]o establish a prima facie case of negligence, a plaintiff must introduce evidence sufficient to establish that (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, (3) the defendant's breach was a proximate cause of the plaintiff's injuries, and (4) the plaintiff suffered damages." <u>Phillips v. Deihm</u>, 541 N.W.2d 566, 572-73 (Mich. Ct. App. 1995).

"As part of a prima facie case of negligence, a plaintiff must prove that the defendant owed him a duty. Duty is a legally recognized obligation to conform to a particular standard of conduct toward another. Duty comprehends whether the defendant is under any obligation to the plaintiff to avoid negligent conduct; it does not include the nature of the obligation." <u>Ross v.</u>

13

Glaser, 559 N.W.2d 331, 334 (Mich. Ct. App. 1997)(citations omitted).

Plaintiff alleges that Defendants failed to: use their "reasonable best efforts to avoid extensively exposing children and other underage consumers to alcohol advertisements;" ensure that their marketing efforts do not unreasonably induce or encourage underage consumers to purchase their products, and; use their reasonable best efforts to ensure that minors do not begin to drink alcoholic beverages as a result of their marketing efforts. Pl.'s Complaint, page 72, at para. 154. "Michigan courts have distinguished active misconduct causing personal injury (misfeasance) and passive inaction or the failure to protect others from harm (nonfeasance). Generally, with respect to nonfeasance, there is no legal duty that obligates a person to aid or protect another. An exception has developed where a special relationship exists between the persons." Ross, 559 N.W.2d at 334. While Plaintiff alleges teenage drinking leads to numerous ills, she does not allege that she suffered a personal injury because of Defendants' conduct. Thus, because her negligence claim is one of nonfeasance, Plaintiff must allege that she shared a special relationship with Defendants' such that they owed her a duty of care.

While Plaintiff did not allege she shared a special relationship with Defendants, she claims that Defendants have heightened duties to the general public to ensure that their products are not used illegally, because they manufacture products that cause numerous injuries, illnesses, and death. However, Michigan courts have recognized no special relationship among manufacturers of products that are potentially dangerous and parents. Nor have Michigan courts imposed heightened duties on such producers. The types of special relationship that are generally recognized under Michigan law include: landlord-tenant, Samson v. Saginaw Professional Bldg., Inc., 224 N.W.2d 843 (Mich. 1975); proprietor-patron, Williams v.

14

Cunningham Drug Stores, Inc., 418 N.W.2d 381 (Mich. 1988); employer-employee, Blake v.

Consolidated Rail Corp., 342 N.W.2d 599 (Mich. Ct. App. 1983); and, residential invitor-invitee,

Kroll v. Katz, 132 N.W.2d 27 (Mich. 1965).  Plaintiff's relationship with Defendants does not

fall into any one of these recognized categories of special relationships, and this Court is not

prepared to imposed a heightened duty on alcohol distributors and manufacturers to prevent the

criminal activity of minors and/or complicit adults.

Nor has Plaintiff alleged facts that could establish Defendants' conduct was the

proximate and legal cause of her injury.  To establish proximate cause, the plaintiff must prove

the existence of both cause-in-fact and legal cause.  Skinner v. Square D Co., 516 N.W.2d 475,

479 (Mich. 1994).       "The standard by which to gauge whether an intervening cause

supersedes, and thus severs the causal link, is generally one of reasonable foreseeability."

People v. Schaefer, 703 N.W.2d 774, 785 (Mich. 2005).   However, "gross negligence or

intentional misconduct . . . is not reasonably foreseeable, and would thus break the causal chain. .

. ."  Id., at 786,  James v. Meow Media, Inc., 300 F.3d 683, 699 (6th Cir. 2002)("Generally, a

third party's criminal action that directly causes all of the damages will break the chain of

causation.").  The criminal act of a third party supersedes the tortious conduct of others, and is

not foreseeable as a matter of fact or policy.  Thus, the acts of purchasing alcohol as a minor,

selling alcohol to a minor, or purchasing alcohol for a minor, are all superseding criminal acts

that sever the causal chain.

Finally, Plaintiff cannot establish an injury.  She cites two Michigan statutes to support

her assertion that she has been damaged by her offspring's illegal purchase of alcoholic

beverages: MICH. COMP. LAWS ANN. §§ 722.2 & 722.3.  These two statutes state that any money

15

earned by a minor is property of the minor's parents, and that parents are obligated to financially support their minor children.  Plaintiff goes on to argue that when the parent's money is used to purchase alcohol by a minor, even if the money is stolen by the minor, the parent is damaged because he or she must use other funds to provide the required support.  However, this does not establish that a separate property interest in "family funds" exists, or that Defendants are liable for the loss of her money.  On the contrary, it merely reinforces the proposition that any illegal purchase of alcohol by a minor is an intervening criminal act that breaks the chain of causation. If the money earned or possessed by a minor child belongs to a parent under Michigan law, then any unauthorized possession or use of that money constitutes a criminal act that supersedes Defendants' advertising as the cause of Plaintiff's injury.

   **E.**  **Plaintiff's Unjust Enrichment Claim Fails as a Matter of Law**

   Unjust enrichment requires: receipt of a benefit by the defendant from the plaintiff, and "an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." Barber v. SMH (U.S.), Inc., 509 N.W.2d 791, 796 (Mich. Ct. App. 1993).  "The process of imposing a 'contract-in-law' to prevent unjust enrichment is an activity which courts should approach with some caution."  Hollowell v. Career Decisions, Inc., 298 N.W.2d 915, 920 (Mich. Ct. App. 1980).  "Courts are generally reluctant to create an implied-in-law contract, except where justice demands it and the creation of a fictional contract would not be contrary to public policy."  5A MICH. CIV. JUR. CONTRACTS § 217.

   Plaintiff cannot establish that either requirement for a viable unjust enrichment claim is met.  First, Plaintiff's offspring received exactly what they bargained for: they, presumptively, received Defendants's products in exchange for money.  Therefore, Plaintiff's offspring received

16

the benefit of the bargain, and Defendants were not unjustly enriched at her expense. Next,

Plaintiff complains that it is iniquitous for Defendants to retain the money because her offspring

are not legally able to purchase their products. However, courts generally refuse to enforce

illegal contracts or grant relief thereunder. Kuala v. Perry, 105 N.W.2d 176, 183 (Mich. 1960).

> It is well settled that the law will not aid either party to an illegal agreement. It
> leaves the parties where it finds them. Neither a court of law or equity will aid
> the one in enforcing it, or give damages for the breach of it, or set it aside at the
> suit of the other, or, when the agreement has been executed in whole or in part by
> the payment of money or the transfer of other property, lend its aid to recover it
> back.

Benson v. Bawden, 113 N.W. 20, 21 (Mich. 1907), Mancourt-Winters Coal Co. v. Ohio &

Michigan Coal Co., 187 N.W. 408, 409 (Mich. 1922), Jones v. Chennault, 35 N.W.2d 256, 259

(Mich. 1948).

Moreover, equity does not demand that the producers, importers, or advertisers of the

alcoholic beverages to provide restitution in a situation where they are twice removed[3] from the

actual sale of their products to the public, and the party seeking restitution was not a party to the

transaction.

**F.    Plaintiff's Public Nuisance Claim Fails as a Matter of Law**

"A public nuisance involves the unreasonable interference with a right common to all

members of the general public." Adkins v. Thomas Solvent Co., 487 N.W.2d 715, 720 n.8

(Mich. 1992)(citing Garfield Township. v. Young, 82 N.W.2d 876, 879 (Mich. 1957); 4

---

[3] Because Michigan is a "control state," in which the State acts as the exclusive
wholesaler for nearly all alcoholic beverages, Michigan law prohibits brewers, distillers and
importers from selling alcohol to the general public. Rather, brewers, distillers and
importers must sell their products only to the State or State-licensed wholesalers who, in
turn, sell to State-licensed retailers.

RESTATEMENT TORTS (SECOND) § 821B).

> "To be considered public, the nuisance must affect an interest common to the general public, rather than peculiar to one individual, or several. . . . It is not necessary, however, that the entire community be affected, so long as the nuisance will interfere with those who come in contact with it in the exercise of a public right." Prosser, supra, § 71.
> As such, the activity must be harmful to the public health, . . . or create an interference in the use of a way of travel, . . . or affect public morals, . . . or prevent the public from the peaceful use of their land and the public streets, . . . . The question in each case is one of fact, and in each case we must consider the facts peculiar to that particular case.

Garfield Township, 82 N.W.2d at 879 (citations omitted). "Unlike a private nuisance, a public nuisance does not necessarily involve interference with use and enjoyment of land."

RESTATEMENT OF TORTS (SECOND) § 821B, cmt. h.

Plaintiff alleges that intoxicated minors create a public nuisance by interfering with the public health, safety, peace, convenience, comfort, and use public rights-of-way. She asserts that her injury is different in kind from the general public because her family resources were expended on alcoholic beverages by her minor children.

Plaintiff has failed to allege an adequate harm, and her public nuisance claim fails. Pecuniary loss is recognizable as a special harm; however, the loss must arise from the interference with the public right, and not from a separate tort.

> Pecuniary loss. Pecuniary loss to the plaintiff resulting from the public nuisance is normally a different kind of harm from that suffered by the general public. A contractor who loses the benefits of a particular contract or is put to an additional expense in performing it because of the obstruction of a public highway preventing him from transporting materials to the place of performance, can recover for the public nuisance. The same is true when it can be shown with reasonable certainty that an established business has lost profits, as when the obstruction of the highway prevents a common carrier from operating buses over it or access to the plaint customers do not come to it. If, however, the pecuniary loss is common to an entire community and the plaintiff suffers it only in a greater degree than others, it is not a different kind of harm and the plaintiff cannot recover for the invasion of the public right.

18

RESTATEMENT OF TORTS (SECOND) § 821C cmt. h.  While Plaintiff alleges that she has suffered a harm different in kind than the public-at-large, her harm is wholly unrelated to what she alleges is the public nuisance.  Plaintiff alleges that intoxicated teenagers interfere with the public highways and walkways, and that this disorderly conduct damages the public health, safety, peace, convenience, comfort, and use public rights-of-way.  However, Plaintiff does not claim that she has been injured in a way different or special in kind than the public-at-large because of the interference with the public highways and walkways.  Plaintiff has not identified a single injury she suffered as a result of an intoxicated teenager's interference with public right-of-ways.  Even if Defendants' actions could properly be assigned as a contributing cause of the public nuisance, Plaintiff did not suffer her economic loss because of the public nuisance.  Therefore, her nuisance claim fails as a matter of law.

Because Plaintiff's claims fail as a matter of state law, there is no need to address the constitutionality of the requested relief under the First Amendment and the Commerce Clause.

## IV.    CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss is **GRANTED.   IT IS FURTHER ORDERED** that Plaintiff's Complaint is **DISMISSED WITH PREJUDICE.**

        s/Marianne O. Battani
        MARIANNE O. BATTANI
        UNITED STATES DISTRICT JUDGE

DATED: May 19, 2006

### CERTIFICATE OF SERVICE

Copies of this Order were served upon all counsel of record on this date by ordinary mail

19

2:05-cv-72629-MOB-VMM   Doc # 107   Filed 05/19/06   Pg 20 of 20   Pg ID 1014

and/or electronic filing.

s/Bernadette M. Thebolt
DEPUTY CLERK
